Estate of Joseph R. Esposito, Erwin Bruce Hallett, James Beckett and Russell Gowans, Executors, Petitioner, *v.* Commissioner of Internal Revenue, Respondent

Docket No. 92346.   Filed May 31, 1963

*William E. Bardusch, Jr.,* for the petitioner.
*Philip Shurman* and *Robert D. Whoriskey,* for the respondent.

#### OPINION

Murdock, *Judge:* The Commissioner determined deficiencies in income tax of the petitioner of $14,172.59 for the period August 6 to December 31, 1957, and $67,649 for 1958, by disallowing claimed charitable deductions.  The issue in the case changed materially with the filing of the Commissioner's brief in which he concedes that the charitable deduction claimed by the petitioner on its 1958 return was deductible and now contends that the charitable deduction in the amount of $34,277.20 claimed by the petitioner for 1957 is not deductible under section 642(c).  He defends his action solely on the ground that $34,085.44 of that deduction represents a fictitious dividend from the Jarie Corp. which served only to avoid personal holding company tax on the Jarie Corp., wholly owned by the petitioner, and was not actually distributed to the petitioner during 1957, although by consent under section 565(c)(1) it was reported by the petitioner, on a cash basis, as if actually received.

The facts of record were introduced by a stipulation which is hereby adopted as the findings of fact.

Joseph R. Esposito died testate on August 5, 1957, while residing in the city and State of New York.  Returns for his estate on a cash basis were filed for the tax periods with the director of internal revenue for the Lower Manhattan District of New York.

Joseph's will provided for numerous specific bequests of cash to charitable and noncharitable beneficiaries including nine admittedly charitable corporations and named those nine charities as the residuary legatees.

A petition for probate of Joseph's will was filed in New York on August 9, 1957.  Objections were filed on behalf of a brother on September 12, 1957.  Letters of temporary administration were granted to the executors on October 15, 1957.  The will was admitted to probate under New York law on December 17, 1958, after a hearing on the objections.

The principal asset of Joseph's estate was all of the stock of the Jarie Corp. which had been for tax purposes his personal holding company. The value of the estate assets, during the tax periods involved herein, exceeded at all times the total amount of all specific legacies payable under his will, plus all of his debts, plus all administration expenses of the estate, including taxes, commissions, and counsel fees.

The Jarie Corp. filed, on a cash basis, income and personal holding company returns for 1957 and 1958. Its return for 1957 did not show any distribution of its earnings, but the estate filed a consent to be taxed as if it had received a dividend of $34,085.44 from Jarie for that year, and Jarie added that amount to its surplus. See section 565 (a) and (c) (2).

The original income tax return of the petitioner for the short 1957 period reported a consent dividend of $34,085.44 from the Jarie Corp. and total income of $34,335.44, but made no claim for any charitable deduction or for any distribution to a beneficiary. An amended return for that period was filed on April 21, 1959, on which a charitable deduction of $34,277.20 was claimed and no taxable income remained.

The account of the temporary administrators and executors of the petitioner for the period from August 5, 1957, to October 11, 1960, reports the receipt on March 10, 1959, of securities of the total value of $753,815.49 and the receipt in May and December 1959 of $106,-590.52 in cash, from the liquidation of Jarie. It lists those items "together with all accrued income or interest thereon" as constituting principal in the hands of the temporary administrators and executors. Nowhere in that account is any 1957 income of Jarie shown as income received by or distributed from the estate. The account was approved by the New York court and became final. There is no evidence in the present record that the $34,085.44 here in controversy was ever regarded under the law of New York as income of the petitioner for the purpose of settling Joseph's estate or that it was income of that estate which the nine charities were entitled to receive under the will as residuary legatees. It was accounted for and treated as principal, a part of the assets received in the liquidation of Jarie, for the purpose of administration under the will.

The fact that the Internal Revenue Code allowed Jarie to escape personal holding company tax because of the action of the administrators of its sole stockholder, the petitioner, consenting to report and reporting the $34,085.44 as a part of its income for the short 1957 tax period while Jarie included it in its surplus as if contributed by the petitioner, is not determinative of the present issue. The answer to the question here depends upon whether under the decedent's will the $34,085.44 was 1957 income of the estate paid or permanently

set aside for the residuary legatees or was to be used exclusively for their purposes within the meaning of section 642(c). Cf. *Bowers* v. *Slocum*, 20 F. 2d 350, 352; *Leon A. Beeghly Fund*, 35 T.C. 490. The evidence does not show that it was so paid, set aside, or to be used and therefore the Commissioner's determination that $34,085.44 of the claimed deduction was not allowable may not be reversed. The Commissioner has made no argument with respect to the remainder of $191.76 claimed as a charitable deduction and apparently concedes that it is deductible.

*Decision will be entered under Rule 50.*