**SID W. RICHARDSON FOUNDATION**

v.

**UNITED STATES of America.**

**Civ. A. No. 4–349.**

United States District Court
N. D. Texas,
Fort Worth Division.

March 31, 1969.

Harry C. Weeks, Fort Worth, Tex., for plaintiff.

Robert L. Waters, Tax Division, Department of Justice, Fort Worth, Tex., for defendant.

OPINION

BREWSTER, District Judge.

Sid W. Richardson Foundation brought this suit to recover a total of $769,711.48 income taxes and interest assessed against and paid by it for the fiscal years ended September 30, 1960, and September 30, 1961, as the transferee of the residuary assets of the estate of Sid W. Richardson, deceased.

All prerequisites for the maintenance of this action have been met, and the Court has jurisdiction under 28 U.S. C.A. Sec. 1346(a) (1).

The following designations will be used herein: "Foundation" for Sid W. Richardson Foundation; "Estate" for estate of Sid W. Richardson, deceased; "Richardson" for Sid W. Richardson;

"Richardson Oils" for Richardson Oils, Inc.; "1954 Code" for Internal Revenue Code of 1954; "the will" for the will and codicil probated as the last will and testament of Sid W. Richardson.

The controlling facts are undisputed. They were established by admissions in the pleadings and the pre-trial order, by oral testimony given by one witness in person and another by deposition, and by documentary evidence and a lengthy written stipulation. Each of the two witnesses was credible, and the Court believed their testimony as to all of the factual matters within their knowledge. All of the established facts have been taken into consideration in reaching the decision in this case, regardless of whether they are expressly included herein.

The following outline of the issues and the ultimate facts will help to understand the later detailed discussion:

1. Pursuant to Section 642(c) of the Internal Revenue Code of 1954, the Estate, in computing its taxable income, was entitled to a charitable deduction for any amount of its gross income, without limitation, which, pursuant to the terms of the Richardson will, was permanently set aside, paid or used for charitable purposes.

2. All of the income of the Estate was so set aside or used by virtue of the provision of the Richardson will specifying that it should be included in the residue bequeathed and devised to the Foundation.

3. The Foundation was a non-profit, charitable corporation exempt from federal income taxes, and was a qualified devisee, legatee and beneficiary within the meaning of Section 642(c).

4. The Estate owned all of the capital stock of Richardson Oils, a qualified small business corporation under Subchapter S of the 1954 Code (26 U.S.C.A. Sections 1371–1377). Those statutes permit the shareholders of a closely held corporation qualified under them to avoid the normal income tax and surtax levied on corporations by reporting as part of their own gross income their respective proportionate shares of the taxable income of the corporation, whether distributed or not. Richardson Oils was therefore not required to pay federal income tax. The Estate, as owner of all the stock of the corporation, included all of the normally taxable income of the corporation in its own gross income reported on its income tax returns for the two fiscal years here involved, even though some of that income in each year was not distributed to or received by the Estate.

5. The Estate, using an accrual method of accounting, also treated all of the undistributed net income of Richardson Oils as having accrued to it generally in each of its taxable years ended September 30, 1960, and September 30, 1961, respectively, without any action on the part of Richardson Oils authorizing a dividend or a distribution as to such amounts. Under the theory that the provisions of the will set aside all of its gross income for charitable purposes under Section 642(c), the Estate took a charitable deduction equal to the sum of its gross income each year. Those deductions included the amounts of the undistributed income of Richardson Oils. As a result of the charitable deductions, the income tax returns for each year showed no tax due.

6. The IRS examined the returns of the Estate for the two years in question after it had been closed and its residue had been received by the Foundation, and determined deficiencies for both years. In its computation of the allowable charitable deduction for the Estate in each year, the IRS eliminated therefrom an amount equivalent to the undistributed income of Richardson Oils which the Estate had treated as having accrued to it for all purposes. That resulted in the deficiencies and assessments here involved.

The plaintiff challenges generally the method of computation used by the Commissioner in determining its net taxable

income. In addition, it specifically takes issue with the elimination from its charitable deductions of amounts equivalent to the undistributed income of Richardson Oils. It says that the qualification of Richardson Oils under Subchapter S entitled the Estate to treat the undistributed corporate income as part of its own gross income not only for income tax purposes, but for all purposes generally. It is unnecessary to discuss the general method of computation, as the plaintiff is not entitled to recover if the inclusion of such undistributed taxable income in its charitable deductions was properly disallowed.

The government says that the Estate was not entitled to charitable deductions for the amounts of undistributed income of Richardson Oils in question because such income was never distributed to or received by the Estate. It says that such income became only a fictional part of the Estate's gross income for the limited purpose provided in Subchapter S, rather than for general purposes, and that it was therefore never subject to the provisions of the will. It argues that the plaintiff's position cannot be sustained without ignoring the corporate entity of Richardson Oils.

The Court is of the opinion that the deductions in question were properly disallowed.

The evidentiary basis for the above contentions and conclusory statements appears in the detailed summary of the facts which follows.

At all times involved herein, the Foundation has been operated exclusively for religious, charitable and educational purposes, and has been exempt from income taxes under Sec. 501(c) (3) of the 1954 Code. It is admitted that it was a qualified donee, devisee, legatee or beneficiary within the meaning of Sec. 642(c) of the Code.

Richardson, a long time resident of Fort Worth, died unexpectedly and while in apparent good health on September 20, 1959. He was then engaged in various and extensive business enterprises, individually, in partnerships, and as either the controlling or the sole stockholder in closely held corporations. Those ventures included the exploration for oil and gas, the development of oil and gas properties, the production and refining of oil and gas, ranching, mining, and exploiting patents. Richardson was active in the conduct and management of those businesses at the time of his death.

Richardson's last will and testament, consisting of the will itself and one codicil thereto, was admitted to probate in Tarrant County, Texas. Perry R. Bass, John B. Connally and Howell E. Smith were named as independent executors. They duly qualified as such on October 19, 1959, and acted in that capacity at all pertinent times.

The will made specific bequests totalling about $14,000,000.00 to eight relatives and one employee. Under the terms of the will, it was within the discretion of the executors to satisfy all of the general bequests either in money or in property, except $105,000.00 and a monthly payment of $1,000.00 to a sister for life, charged upon the corpus. The residue of the estate, subject to the charge of the $1,000.00 per month payable to the sister, was left to the Foundation. In that connection, the will specifically provided: " * * * There shall be included in the residue of my estate disposed of hereby all the income, if any, received by or accrued to my estate during the administration thereof * * * ".

At the time of his death, Richardson had properties on hand valued at approximately $92,000,000.00. $2,937,292.-86 of that was cash. He was indebted individually and as a partner, endorser or guarantor for about $29,000,000.00. In addition to his debts, the death duties amounted to some $43,000,000.00.

The executors duly adopted on behalf of the Estate, for accounting and income tax purposes, a fiscal year ending September 30th and the accrual method of accounting. The propriety of those meth-

ods has not been questioned, and they were consistently followed during the period of the administration.

The executors determined in good faith and justifiably that the bulk of the assets of the Estate could not be liquidated within a short time without excessive sacrifice. The general policies followed in their administration of the estate were:

(a) Various properties were sold, with a cash realization of several million dollars, at times when the sales could be prudently made.

(b) Efforts to expand or increase activities with reference to the Estate holdings were immediately discontinued, but commitments made and projects not completed during Richardson's lifetime were consummated.

(c) Payments were made on debts of the Estate and on death duties, and steps were taken so that federal estate taxes not paid within 15 months from September 30, 1959, could be paid in installments.

(d) Specific bequests were satisfied in full before January 1, 1962, except for the unmatured portion of the $1,000.-00 monthly payment due the Richardson sister during her lifetime. All of such bequests, except $256,060.36, were satisfied by delivering property specially devised or by transferring property of the Estate to the beneficiaries. None of the income of the Estate was used for such purposes.

Effective January 1, 1962, all of the remaining assets of the Estate were transferred, conveyed and delivered to the Foundation as the residuary legatee and beneficiary under the will, subject to all the unsatisfied obligations of the Estate. Those assets included $3,786,273.50 in cash. The Foundation borrowed $30,-000,000.00 and paid off the balance due on the death duties. The $30,000,000.00 loan and all other remaining obligations of the Estate were paid by the Foundation through money realized from the management and operation of the residue so received.

At the time of his death, Richardson owned all of the capital stock of Richardson Oils. That stock, except for the 160 shares redeemed as hereinafter set out, passed to and remained in the possession and control of the executors as part of the property of the Estate during the entire period of administration. It was a part of the residue which was transferred and delivered to the Foundation as of January 1, 1962. Thereafter, the stock continued in the possession, control and ownership of the Foundation.

Richardson Oils had its home office in Fort Worth. It was engaged in the business of developing oil and gas properties and producing oil and gas. Most of the Estate's oil properties, other than non-operating interests, including those received by it upon the liquidation of several partnerships in which Richardson had an interest, were transferred by it to Richardson Oils, subject to reserved oil payments. Such oil payments were subsequently transferred by the Estate to the Foundation.

Richardson Oils and the Estate duly elected under the provisions of Section 1372 of the 1954 Code for Richardson Oils to be treated, for income tax purposes, as a small business corporation within the purview of Subchapter S, Sections 1371–1377, both inclusive, of the Code. Those elections were in full force and effect during the entire period of the administration of the Estate. While Richardson Oils, as such a qualified small business corporation, had to file a federal income tax return for its taxable years, it did not have to pay any income tax. The Estate, as the sole shareholder of Richardson Oils, was permitted to include in its own gross income the amount of the taxable income of such corporation, whether distributed or not.

The fiscal year adopted and being used by Richardson Oils for accounting and income tax purposes at all pertinent times ended on October 31, a month later than that of the Estate.

The amounts of the taxable income of Richardson Oils and of its distributions and dividends to the Estate for the periods in question are summarized as follows:

*Taxable Income*

| | |
|---|---|
| For the fiscal year ended 10/31/60 | $ 492,016.18 |
| For the fiscal year ended 10/31/61 | 1,229,988.20 |

*Distributions and Dividends*

| | |
|---|---|
| For the fiscal year ended 10/31/60 | $2,540,000.00 |
| For the fiscal year ended 10/31/60 | 925,000.00 |
| For the fiscal year ended 10/31/61 | 2,300,000.00 |

———◆———

These amounts were carried on the books of the Estate as having accrued to it as part of its gross income, not only for Subchapter S tax purposes, but for all purposes generally attributable to an accrued item. As part of such gross income, they were included in the charitable deductions of the Estate in the fiscal years applicable to them.

The $2,540,000.00 distribution was made on September 30, 1960, the last day of a fiscal year of the Estate. It had no relation to income. It consisted of corporate properties valued at that amount transferred and conveyed to the Estate in redemption of part (160 shares) of the Richardson Oils capital stock owned by the Estate. In its examination of the income tax returns of the Estate, the Commissioner treated the $2,540,000.00 as a dividend received by the Estate in its fiscal year ended September 30, 1960.

The $925,000.00 was a cash dividend declared on October 18, 1960, payable by the end of that month. The liability to the Estate for it was discharged during the month of October, 1960, by the cancellation of a total indebtedness of $925,000.00 then owing Richardson Oils on account of advances theretofore made by it to Richardson during his lifetime and to the Estate during an earlier period of its administration. The Commissioner recognized this $925,000.00 as a cash dividend, and deducted it from the $1,229,988.20 taxable income to get the amount of $304,988.20, which it treated as undistributed taxable income of Richardson Oils for the year ended October 31, 1960. That date would make it applicable to the Estate's fiscal year ended September 30, 1961. The cash dividend of $2,300,000.00 is not material to the issues in this case because it was paid on October 18, 1961, after the ending date of the last fiscal year of the Estate here involved.

The gross income of the Estate for its fiscal year ended September 30, 1960, was $15,673,905.55, and for its fiscal year ended September 30, 1961, was $17,837,874.33. No part of the revenues received by the Estate during those fiscal years was used for any purpose other than operation, maintenance and protection of the properties of the Estate, and payment of debts and taxes, including death duties, and expenses of administration.

Income tax returns were duly filed for the Estate for its two fiscal years in question. Each of the returns showed substantial amounts of gross income, as well as net income before any deduction for charitable contributions. The charitable deduction taken in each year under Section 642(c) and the $600.00 statu-

tory exemption exceeded the amount of the net income, so no tax liability was shown on either of the returns. The deductions were taken in good faith.

The amounts of the undistributed net taxable income of Richardson Oils included in the income tax returns of the Estate, both for Subchapter S purposes and as part of the gross income comprised in the charitable deduction under Section 642(c), were $492,016.18 for the Estate's fiscal year ended September 30, 1960, and $300,466.14 for the year ended September 20, 1961.

The IRS examined the returns of the Estate for the years in question after the residue had been delivered to the Foundation. It determined that the Estate had a net taxable income of $483,-425.90 for the fiscal year ended September 30, 1960, and of $299,816.14 for the one ended on September 30, 1961. The amount of the income tax deficiency for the first year was determined to be $411,-461.55, and for the second year, $234,-906.92. The taxing authorities disallowed the inclusion in the Estate's charitable deductions of the amounts of the undistributable income of Richardson Oils.[1]

1. The following, taken from paragraph X. of the written stipulation, shows how the taxing authorities arrived at the amounts of the charitable deductions allowable to the Estate:

### A
#### Fiscal Year Ended September 30, 1960

| | | | |
|---|---|---|---|
| Net operating income as per Exhibit 3 | | | $ 1,316,059.88 |
| Less: ½ capital gain included in Estate return | | 303,339.40 | |
| Less: Portion applicable to undistributed taxable income from Richardson Oils, Inc. | 492,016.18 | | |
| Less: ½ of capital gains included in Richardson Oils, Inc. income | 7,990.28 | 484,025.90 | 787,365.30 |
| Amount treated as charitable deduction | | | $ 528,694.58 |

If the $484,025.90 amount shown above had not been deducted in the above calculation, the charitable deduction would have equaled the net income before deducting the charitable deduction.

### B
#### Fiscal Year Ended September 30, 1961

| | | | |
|---|---|---|---|
| Net operating income as per Exhibit 4 | | | $ 8,490,183.19 |
| Less: ½ capital gain included in Estate return | | 706,955.31 | |
| Less: Portion applicable to undistributed taxable income from Richardson Oils, Inc. | 1,229,988.20 | | |
| Less: Cash dividend | 925,000.00 | | |
| | 304,988.20 | | |
| Less: Portion of ½ capital gain deduction applicable to undistributed income | 4,522.06 | 300,466.14 | 1,007,421.45 |
| Amount treated as charitable deduction | | | $ 7,482,761.74 |

If the $300,466.14 shown above had not been deducted in the above calculation, the charitable deduction would have equaled the net income before deducting the charitable deduction.

Except for such exclusions, there would have been no tax liability in either year.

The net value of the residue received by the Foundation from the Estate was far in excess of the income tax claims, and the Foundation, as the transferee of the Estate, was liable for the deficiencies. The Commissioner therefore assessed the Foundation $498,950.68 ($411,461.55 tax and $87,489.13 interest) for the first year, and $270,760.80 ($234,906.92 tax and $35,853.88 interest) for the second year. The total amount of tax and interest due was thereupon paid by the Foundation.

The plaintiff argues that the undistributed income of Richardson Oils became a part of its gross income because it was on the accrual method of accounting and because Subchapter S of the Code authorized it. These grounds are not tenable, whether taken separately or together.

Richardson Oils, as a private corporation, was a legal entity in its own right. It did not owe the Estate a debt in the amount of its undistributed profits at any time, except to the extent that it declared a dividend. It was plowing back into the business the undistributed profits in question. How would the Estate be able to meet that situation under its accounting methods? Would it reduce the accrued account from day to day to adjust to the amount left on hand after paying expenses? The corporate entity of Richardson Oils would have to be completely ignored to say that its undistributed profits should have been considered an accrued asset of the Estate.

The purpose of Subchapter S is not to penalize taxpayers, but to give them a windfall. It provides a way that the shareholders of a qualified closely held corporation can save their company from having to pay the heavy income taxes and surtaxes imposed on corporations. Qualification under it is voluntary, not compulsory. All of the stockholders and the corporation itself must unanimously elect to qualify under the subchapter. A method is provided whereby the election can be revoked and terminated at the end of a taxable year at the instance of the corporation or of any of its shareholders, including those who acquire stock subsequent to the election. The saving can be substantial, too. At the time here involved the normal tax and surtax on a corporation amounted to 52% of all its net income over $25,000.00. The term, "small business corporation", as used in the subchapter has reference to the small number of owners of the corporate stock, rather than the amount of the corporation's income. Richardson Oils, for instance, had an annual income in the multimillions, yet it could qualify as a "small business corporation" under these statutes. The language of the various sections of the subchapter makes it clear that this statutory fiction is only for the limited purposes of enabling certain taxpayers to take advantage of the windfall. Restrictive phrases such as or similar to "for the purposes of this subchapter" appear throughout.

Richardson Oils had only one shareholder, but Subchapter S permits as many as ten stock owners in a corporation otherwise qualified. If the rule contended for here by the plaintiff were the law, it would apply to all qualified corporations, whether there happened to be one stock owner or any number of owners up to ten. It might be unlikely that any problems would arise from considering undistributed profits of a qualified corporation to have accrued to its only stockholder as part of his gross income for all purposes; but there could be unlimited trouble in the case of a corporation with several shareholders up to ten. The owners of a majority of the stock might want to leave the profits in the corporation for growth purposes, and yet desire to take advantage of the tax saving. One or two minority stockholders might be persons who believe in spending money as fast as they can get it. Under the argument advanced by the plaintiff, an election to qualify such a corporation to lower taxes would result in making the undistributed profits subject to payment to the dissident minority. No such purpose was intended by Subchapter S. If

there had been, there would have been no place for "undistributed taxable income", as found in Section 1373.

Cases where the same income was treated one way under fictional provisions of the tax statutes, without being regarded the same way generally, are not new. Estate of Esposito v. Commissioner, 40 T.C. 459; Freund's Estate v. Commissioner of Internal Revenue, 2 Cir., 303 F.2d 30 (1962). In this connection, the Court in the *Freund* case said at p. 32:

"From these fictional provisions relating to accounting it does not follow, as appellants contend, that income never received by the decedent's estate, although it must be reported by the estate as gross income, must also be treated as 'paid or permanently set aside' for charity under the terms of the decedent's will, and so entitled to the deduction permitted under Section 642(c)."

The undistributed income of Richardson Oils had to become subject to the charitable provisions of the Richardson will before it could be included in the Estate's charitable deduction under Section 642(c). That was the only way in this case it could be dedicated to charity. The portion of that statute pertinent here reads:

"In the case of an estate or trust * * * there shall be allowed as a deduction in computing its taxable income * * * any amount of the gross income, without limitation, which pursuant to the terms of the governing instrument is, during the taxable year, paid or permanently set aside for a purpose specified in section 170(c), or is to be used exclusively for religious, charitable, scientific, literary, or educational purposes * * *." Section 642(c), 1954 Code, 26 U.S.C.A. Sec. 642(c).

The Richardson will is the "governing instrument", as that term is used in the above quotation. The propriety of the charitable deductions claimed by the Estate must be determined from the provisions of the governing in-

strument, rather than from the acts of the executors. Estate of J. B. Whitehead, 3 T.C. 40 (1944), affirmed, sub. nom., Commissioner of Internal Revenue v. Citizens & Southern National Bank, 5 Cir., 147 F.2d 977 (1945); Bowers v. Slocum, 2 Cir., 20 F.2d 350 (1927); Eagan v. Commissioner of Internal Revenue, 5 Cir., 43 F.2d 881 (1930). The capital stock of Richardson Oils came within the control of the provisions of the will, but the corporation's undistributed profits did not. Until a dividend was declared, the corporation had the right to use those profits in any legitimate way it saw fit, without regard to the provisions of the will which governed the Estate. Under those circumstances, Sec. 642(c) did not become applicable to such undistributed profits.

Since the charitable deductions in question were properly disallowed, judgment will be entered for the defendant.

This opinion will serve as findings of fact and conclusions of law under Rule 52(a), F.R.Civ.P.